The crux of this case lies in Allstate's erroneous reliance on the allegations of intent in the underlying complaint. That's specifically prohibited by the California Supreme Court in Gray v. Zurich. That gives rise to all the errors. Allstate said, okay, the allegations were that Mr. IRIRABEDIAN acted intentionally in every step along the way. Therefore, there's no accident. Therefore, there's no potential coverage. But didn't he say, I had nothing to do with the mailing? That's right. He said he had nothing to do with it at all. So why can't the insurer look at the statement by the insurer that whatever happened here, I wasn't responsible for it? Oh, it definitely should. And making the coverage determination. That's right. It definitely should. And that negates Allstate's argument that this was an intentional tort because Mr. IRIRABEDIAN says, I wasn't involved at all. Oh, wait a minute. You've lost me now. Gray says that the focus is the facts of the case rather than the theory proposed. The focus of the case is that it is alleged intentional all the way down the line. We produced this material. We published it. And so now the act was an intentional act by somebody. IRIRABEDIAN says, I wasn't there. So what? The coverage goes to, not to IRIRABEDIAN, it goes to the nature of the act, which is the intentional tort of defamation. So IRIRABEDIAN may end up paying no damages, or he might not be liable somewhere down the line on the merits of the defamation. But we're talking about duty to defend. We're way up the line from the merits of the case. So I don't understand what his defense, I wasn't there, I didn't do it, has anything to do with coverage or duty to defend. Because you look at it from the standpoint of the insured. You can't just say somebody intended this. Remember in the brief there's a case saying you always look at accident from the standpoint of the insured. The insured here is saying I wasn't involved. Therefore, that makes the facts known to the carrier. He did not intend this. I would agree with you on one point. What got me on this case, and I'm glad we're having this discussion, is, but here's what happened. As in Gray, we had the allegations of the complaint, and we had whatever information the insured gave after that. You were asked in the letter if you have it. When they denied coverage for, or denied the duty to defend, they said, bring me some more facts. IRIRABEDIAN did not come back and say this was an unintentional publication. There's no facts in this record that show that it's an unintentional. He said, I wasn't there. But that doesn't change the nature of the act that was described in the complaint, because there's no facts in this record that were before the insured or the insurer that was said that this was an unintentional publication. But, again, I reiterate, you judge that from the standpoint of Mr. Irirabedian, and it wasn't unintentional from him. Globally, you can take it anywhere. There's no facts before the insurer that shows this was an unintentional publication. There's none, period. Okay. Even if that were true, because I am disagreeing with that. I'm saying you must judge that from. I'm just trying to see what your position is, because it's very difficult to analyze. My position is that you judge that from Mr. Irirabedian's standpoint. You can't say X, who committed the tort, intended it. Therefore, Mr. Irirabedian loses his coverage. No. You judge it from the standpoint of the insured. The insured put the carrier on notice. I didn't intend this. I wasn't involved. He didn't say I didn't intend it. He said I didn't do it. That's right. Which means he didn't intend it. Well, no, no. I mean, that's a different thing. I mean, he doesn't say, you know, I thought I meant to press delete, and I pressed sent by mistake. Okay. I don't know what you're talking about. I didn't do anything. I don't. Which makes him even more innocent. He accused him of intentionally defaming somebody. And he says, I don't know what you're talking about. I didn't. It wasn't me. Furthermore, going back to the second point. What's the answer to that? The allegation of the complaint is that this was an intentional malicious defamation. And he says, I don't know what you're talking about. It wasn't me. I didn't do it. Which definitely means it's not intended as to him. You drew the complaint. Yes, I did. Okay. You drew the complaint because you wanted punitive damages, and you had to have intentional court to do that. Yes. And you intended to say that what happened here was intentional. Now, whether Mr. Harabedian was part of it or not comes down the line. We're way up the line on duty to defend. Duty to defend kicks in when you analyze, if you read Gray again, what are the facts of the complaint, whether the facts were gave to the insurer by either party, any party. We have no facts that change the intent that you put in that complaint. This is an intentional tort. Two things there, going back to, remember, Gray says that you've got to eliminate the allegations of intent from the complaint. You're not allowed to consider those. You're supposed to screw the complaint as alleging, if it can, an unintentional tort. Well, if it can, it could have been aliens that came down and did it. No. But you brought, there's no facts in the record. You were asked to put in more facts. Harabedian was asked to put more facts to the insurer. No other facts were put before the insurer on the initial determination of defense. Now, someone could have come in and said, you know what, that box of materials was put in the back room, because even though we produced this, we never intended, after the board meeting, to put it out. Somebody stole them and publicated. Now you've got a duty to defend. Now, remember, we don't have any of those that would negate, which is the linchpin. I'm trying to figure out, Gray, the linchpin, which was the publication. If it's an unintentional publication. Or an unintentional, meaning as to this Mr. Hrabachian, or it could be to Mr. Hrabachian, or it's unintentionally untrue. But those are the aliens coming from outer space. None of those facts were proposed. But remember, Gray says you've got to consider potential facts. And in particular, you cannot consider the intentional allegations in the underlying complaint. Gray has a whole page on that saying, you can't consider intent as alleged. Mr. Tater, it seems to me that you're turning the analysis of the coverage question on its head. We have to look at the language of the policy. We look at the allegations of the complaint, which, as Judge Brunetti points out, all allege intentional conduct.  I have nothing to do with it. In order to decide, interpreting the language of the policy, whether Allstate had a duty to defend. Isn't that the analysis that we must apply here? Except that you must eliminate from the consideration the allegations of intent in the complaint. Well, what you're really asking us to say is, if it's theoretically possible. Exactly. For someone to unintentionally defame someone, Allstate has a duty to defend.  That's Gray's position. The problem is, you didn't allege that. And Mr. Harabedian says that he had nothing to do with any kind of an unintentional defamation because he wasn't involved in it. And Gray. Your argument would make Allstate liable for coverage any time a claim was filed, period. No. The way Gray phrases it is you look at the nature of the tort and must the tort be inherently wrongful. The example Gray v. Zurek gives is malicious prosecution. There's no such thing as negligent malicious prosecution. Therefore, there's no duty to defend. The other cases the Supreme Court has talked about mainly are the molestation cases. And the Supreme Court and the others have hung their hat on saying, this is inherently wrongful. It can't have negligent molestation. Yeah, but that goes there. Let me read you, Gray. Here's what holds me up. Since modern procedure rules focus on the facts of a case rather than the theory of recovery and the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured and other sources. That's what our scope is, I see, as Gray tells us. We have to look at the complaint and what the insurer has found out or the insured gives him. And I have not heard from you other than theoretically that there's other possibilities. They didn't have any further facts on the first determination whether they should duty defend. But remember, Gray also directs the carrier to look at potentiality, which means possible, which means it's got to look at anything that's possible. It's got to look at the three theoretical possibilities. That's why the carrier has duty to go out and investigate. It can't just say, well, we looked at the complaint. That's it. No. Everyone's known that's not true ever since Gray came out. You'll recall in the Montrose case, the carriers wanted to go in and argue, saying, well, we only have a reasonable duty. What is it that the insurer would investigate in the face of your intentional allegations and the insured statement that he had nothing to do with this issue? I think the insured is on the hook, given Mr. Harabian's allegations saying I'm not involved, because that means he's saying he's not. I understand your argument. If you want to save some time for rebuttal, you might want to do that. Okay. Thank you very much. Thank you. Please, the Court. Raul Martinez for Allstate. I believe this area of the law has been fully covered by the California State Courts of Appeal. And essentially, the Laporte decision from the Northern District is exactly this case. It's basically that you don't get a duty to defend on an occurrence policy for a defamation claim. Well, Laporte is good, but it slides into the area that counsel is arguing, and that is they look at the nature of slander and say, well, slander is always intentional. Slander is not always intentional. The linchpin is whether or not you intended to publish and some of those other factors. But how do you get there? That's the whole point. And it seems to me we go back to the basics that I read in Gray. I've read Gray three times or four times trying to prepare for this case, because if you slide off and start talking about the judge was close here, too, but they try to slide off and say, well, we're talking about slander. Therefore, it's always intentional. That's not true. And Laporte is there, but there's a little element here because of the denial. I wasn't there. It wasn't intentional. So how do you analyze that? The question is not whether slander is intentional or not. It's whether slander is an accidental act. And accident and negligence under the case law are two different things. The focus of the coverage here is my example. What happens if this is produced in an organization? A board of directors looks at this and a manager says, I'm going to publish this. This is what I want to do. The board of directors says, oh, no, you're not. This is not good stuff. And they say, you bring it back to the shredder room and put it back there. It goes back to the shredder room and one of the irate directors in the middle of the night goes out and publishes it. Now, is that intentional slander? It's a mistake in publication. I think that's what you're talking about. Exactly. Or sent to the wrong recipient. Exactly. The intent wasn't to publish. Somehow it got out and escaped. I think that's a nuance that you have to deal with, I think, when you're talking about when you look at Gray. Because Gray says, give me the facts of this whole case. And here the facts of the whole case are the complaint, the denial that I had anything to do with it, a letter goes out and says, give me some more facts. No more facts in the case. I mean, I don't see any other facts that the insured had to look at. Well, I would argue that under the occurrence definition of this policy, and it's different from the language of the Gray policy, the occurrence language is something that's developed maybe ten years after Gray. And the idea is that if you intend to do the act, so if you send out the mailing, but you send it out to the wrong recipient, or you don't shred it, but you intend to do that act, under the modern occurrence definition, under your hypothetical, that would not be covered either. But I agree with you. That's not the facts we have here. We don't have to go there. If you intend to speed and cause an accident, would that be covered? I think if you intend to speed and cause an accident, that would not be covered. That's not an occurrence. You don't intend to cause the accident, but you intend to speed the act. There's intention. I think that may present a situation where there's a gradation, a gray area, where you get to the point where you're going 120 miles an hour, and it becomes virtually certain you're going to get in an accident. If you're speeding 75 on a 65 zone. But you intend to try to beat the light, and you cause an accident. Would that be covered? I don't think that most carriers would treat that as a non-occurrence. They would provide coverage for that. Because it's an unexpected occurrence. It's an unforeseeable result. The act is intentional. The act is intentional, but you get under the Mendez v. Merced case, you get an unintended, unexpected, unforeseeable result. But I think if you get to the point where you're running red lights every day, and you're running them at 90 miles an hour, it becomes a virtual certainty. In that context, it's no longer an occurrence. Tell me what facts you consider, so that I can focus myself, were in the hands of Allstate when they declined the duty to defend tender and when the letter was sent out declining that duty. I think Allstate at all times had an allegation of a publication, an intentional act. A publication. And what else did they have? What other facts did they have in their knowledge? They had at some point, I think, some dispute from the insured as to what his role was in the process. And the insured claimed I didn't have anything to do with it. How do you analyze those two aspects? The intentional slander alleges in the complaint and his denial he had anything to do with it. How do you analyze that under your theory? Under my theory, you look at the allegations of the complaint, and you see that's what governs this entire process. And the allegations say there's an intentional publication. And that's all you can go by. I think that's the beginning and the end of the analysis, frankly. You know, if he says I didn't have anything to do with it. What if Mr. Harabedian called them up and they said facts is the complaint would decide he tenders the defense. And then he tells me, you know, I was there all the time. I worked there every day. And it was never intended that this was to go out. None of us intended that this was to go out. Even though we intentionally phrased that language, even though we intentionally decided we were going to publish this, we never intended to publish it. It was just an afterthought. We got scared. But it got out. But we never intended it. Is that enough to raise the possibility that the complaint might be amended? I don't think so. I think the fact that it's published means that you had an intent to publish. You had an intent to do the act. You have a very narrow view of the duty to defend under California law. It's pretty broad. So you're saying nothing he could have said with regard to intention to publish would have raised your duty to defend. I would speculate. I don't have those facts in front of me, but that would be. I just gave you something. Mr. Harabedian, the insured, says I'm going to tell you right now. This was never intended to be published. I don't care what that complaint says. I'm telling you I've got facts. I've got witnesses. It was never intended to be published. Under that hypothetical, and I don't think it's just the facts we have here, I don't think that's an occurrence because you still have the fact that you published it. It has nothing to do with occurrence. It has to do with duty to defend law. Right. And you're saying even though the insured had those absolute facts, I've got witnesses lined up, I can get you 10 witnesses that will tell you we never intended that guy to file the complaints, completely crazy, and I'm telling you you've got a duty to defend law. In other words, you're saying if the insured did not intend to do the act that resulted in the libel or slander claim, then I might agree with you in that context, that if there was no intent to do that. But I think nine times out of 10, when an insured does something, he does so volitionally. So you have that intent present. But, I mean, I'm sure hypothetically somebody could be sleepwalking and something could happen. Well, suppose he publishes a newspaper and says so-and-so was found now guilty today when it should have been not guilty today. It's a typo in the publication. Would that be covered? I think it's an intentional act. It's a mistake in publication, but it's an intentional act. Okay. Following it up, the person who did that says, you know something? We've got this new computer. The darn thing was screwing up and we were in a hurry. Never did we intend. And he brings in ten copies of drafts and the word is the other way. And he says, I never intended. You're still not going to cover him? Somebody did it. Somebody did it volitionally. Somebody in the mail room, somebody within the organization sent out the mailer. And that part of it is intentional. The preceding part may not be intentional, but the actual mailing becomes intentional. And that's why I asked you about my traffic accident hypo. If we follow that through, any kind of volitional act behind the wheel would be not covered under the all-state policy. Is that what you're saying? Well, no, because if something unexpected, unintended, unforeseeable happens, and I guess you get to your question, Justice Brunetti, as to was it unexpected, unintended, unforeseeable that somebody would send out a mailer when they were told not to. And I would agree in that scenario, maybe you do have some possibility of disagreement. The only reason I'm exploring this is that all of us who have been out in the insurance world know this duty to defend is a difficult area. And we've cut down to the real fine line here. And the question is how we apply gray and how we look at what facts the insurer had. And Judge Silverman's raised some issues, so am I, about what's in your knowledge after a clear intentional act from the complaint. But then you get down the line a little bit, and it seems like you're not going to back off as long as you've got an intentional act alleged in the complaint. No matter what the insured says, you're not going to give them a duty to defend. I think what I'm saying is victim, because those aren't the facts we have here. Well, I understand that, because we're dealing here with the facts that he said I wasn't even there. Right. But in my response to that hypothetical where he says he wasn't there, assume you have a homeowner who sued for medical malpractice, and medical malpractice is a risk that's not covered. And the homeowner says, look, I'm not even a doctor. I deny I was even there. I wasn't in the hospital room, the operating room. I'm not a doctor. There would be no coverage, because this is a risk that's not covered by the policy. So you have to focus on what the risk is that this covers. It covers an accidental act and nothing else. So that's the premise, I think, that you have to go by, is what is the risk that we're covering here. I think the California law has negated the fact that you look at the indemnity portion to drive the duty to defend. Those are two separate items. I agree. Once the Court has further questions, I would be prepared to submit. Thank you very much, sir. Mr. Tater, you have a few seconds left. Okay. If counsel alleged that defamation is inherently not a risk covered, then why does Allstate defend some defamation cases? Evidently, they can spew their policies potentially covering defamation. Further, going back to the being stuck with what the complaint says, in my brief I cited Montrose on page 299 saying, defense is required if the complaint might be amended to give rise to a liability that would be covered under the policy. That's followed by the quote from Davidson saying, if the broad charge made which claims an intentional or willful tortious act contains within it the potentiality of a judgment based on nonintentional conduct, the indemnitor becomes liable to defend. Plus, you've got the Allstate case, Allstate v. Overton, which says, we don't care that the complaint alleged intentional conduct or an intentional tort. Maybe at trial, proof falls short of that intent, and you end up instead with a negligence-based tort, then there's still the duty to defend. Thank you very much, Mr. Tater. Thank you.  The case just argued is submitted. 0356727 Hartford Casualty Insurance Company v. Powerplay Products, Inc. Each side will have ten minutes on this case.
judges: Brunetti, Silverman,tallman